JEMISON REALTY CO., Inc. v. PRUDENTIAL INS. CO. OF AMERICA.

No. 12725.

United States Court of Appeals
Fifth Circuit.

Nov. 15, 1949.

---

11.  33 C.C.P.A.(Patents) 1023, 154 F.2d 522.

588

Crampton Harris, Birmingham, Ala., Joseph S. Mead, Birmingham, Ala., for appellant.

Francis H. Hare, Birmingham, Ala., for appellee.

Before HUTCHESON, McCORD and RUSSELL, Circuit Judges.

## HUTCHESON, Circuit Judge.

Brought by appellant, plaintiff below, a real estate broker or agent, the suit was for commissions claimed to have been earned by it by closing a deal with Ann Lewis Shops for a long term lease.

The claim was that plaintiff and defendant had agreed that if plaintiff did procure for it a tenant acceptable to and accepted by defendant, defendant would pay the agreed commission, that plaintiff did procure such a tenant, and that defendant failed and refused to pay the commission due.

The defense was a denial that defendant had promised and plaintiff had performed as alleged, and two special defenses.

One of these was a plea that the only agreement at any time existing between plaintiff and defendant was that plaintiff could bring offers to it for its acceptance or refusal with the understanding that unless the defendant accepted and made a deal with a customer brought by plaintiff, no commission would be due, and that plaintiff had not accepted, and reached an agreement with, the agent's prospect.

The other plea was that it was fully understood that the premises were subject to redemption from foreclosure and that all negotiations between plaintiff and defendant were made subject to the exercise by the mortgagor, the Nelson Estate, of its right of redemption, that plaintiff would, therefore, in no event be entitled to a commission if the property was redeemed by the owner, and that the property was so redeemed.

The case was fully tried to a jury on the issues tendered, and when the evidence was all in, the district judge of the opinion that it established as matter of law that the property had been redeemed by the mortgagor, directed a verdict for the defendant.[1]

---

1. Because what the judge said to the jury points up the contentions made here, the following is quoted:

"* * * As I view this case there are two controlling issues, one of which is this: Did the plaintiff in this case as a broker earn a commission from the defendant, The Prudential Insurance Company? That issue involves a question as to whether or not The Prudential Insurance Company commissioned the Jemison Realty Co. to obtain for it a tenant for this commercial property on terms which were accepted by The Prudential Insurance Company. The Decision of that issue rests on another question, which, expressed in the language of the layman is this: Did Mr. Carr succeed in making a deal between Ann Lewis Stores and The Prudential Insurance Company? That issue of fact would be submitted to this jury for its decision except for a legal conclusion, which I feel bound to reach on another issue.

"It is my opinion that the substantial weight of the evidence in this case is to the effect that on December the eleventh,

Plaintiff, appealing from the judgment, is here insisting, that the undisputed evidence established that the contract for the commission was made and performed, and the commission earned as claimed by it, and that what defendant called, and the judge found was, a redemption by the mortgagor, was not a redemption by, but a sale to him.

Particularizing, appellant insists that finding itself caught between the conflicting claims on the one hand of the Darling Co., its temporary lessee, and of the Ann Lewis Shops, the lessee appellant had procured, appellee, desiring to extricate itself therefrom, went about to work up and put into effect an arrangement which, though a pretended redemption by, was in fact a sale to, the mortgagor, and appellee did not thereby relieve itself from obligation to pay appellant the already earned commission.

Appellee, on its part, urging upon us that the district judge was right in determining that there was a redemption, and therefore no commission ever became due, insists further that, the redemption aside, the evidence taken at its best for plaintiff, completely fails to show that there was ever any meeting of the minds in an agreement for leasing between appellee and Ann Lewis Shops, appellant's prospect, and that no "deal" having been effected, no commission was earned.

The district judge, in his remarks to the jury, set out in the note above, was apparently of the opinion that whether a deal was consummated was for the jury. For he stated that he thought the substantial weight of the evidence was in favor of plaintiff and indicated that, but for the redemption, the case would have been sent to the jury on the question of whether the deal had been made and the commission earned.

A careful reading of the extended examinations of Carr, who as agent for the plaintiff made the verbal contract sued on, direct, cross, and by the district judge, and of the other oral and the documentary evidence in the case, makes it clear that there is much to be said for the district judge's view, that the question of whether the agent had performed its contract and earned its commission was for the jury.

In agreement as we are, however, with the view of the district judge that the property was redeemed, we do not find it

1943, the plaintiff in this case had performed the service which it had agreed to perform through Mr. Carr, and had produced a tenant, ready, willing and able to lease this property on terms which The Prudential Insurance Company was willing to accept.

"I would not have told you that had I submitted the case to you, because you would be required to examine the evidence to determine that, but I am saying that I think that the weight of the evidence is to the effect that on Dec. 11, the plaintiff earned a commission, that that commission was subject to being defeated by a redemption of this property by the mortgagees, and I am to pass on the question as to whether what happened along about Jan. 11,—and where I used the date 1943, I meant 1942—because I am to determine whether what happened on or about Jan. 11, 1943, constituted a redemption of this property by the mortgagees, as the term redemption was used in the understanding or contract between the plaintiff as broker and The Prudential Insurance Company as owner of the property. And where I said mortgagee, I meant mortgagor, be-

cause The Prudential was mortgagee of this property. In other words, the agreement between Mr. Carr and Mr. Abernathy, for the Prudential, was that Mr. Carr would get a tenant or make a deal with Ann Lewis or some other tenant, and he did make it with Ann Lewis, as I view the evidence, but that he would not be entitled to any commission if the property was redeemed by the Nelsons. That was his testimony.

"I am convinced that in this case the evidence shows conclusively that the mortgagors of the property, the Nelsons, exercised that statutory privilege of redeeming, and that what was done amounted to an exercise of the statutory redemption or right to redeem. * * * I am directing a verdict in favor of the defendant, and giving at the request of the defendant its charge 1., which reads as follows: 'The Court instructs you that your verdict in this case must be in favor of the defendant', and I hand you now a form of verdict which will carry out the directions of the Court, and one of your number will sign that verdict as foreman."

necessary to determine whether appellant or appellee is right, or neither one is, upon their respective insistences that, the redemption aside, plaintiff was or was not entitled as matter of law to a commission.

In Prudential Ins. Co. v. Jackson Sec. & Inv. Co., 5 Cir., 159 F.2d 678, relied on by appellee, where this same transaction with Nelson was in question and we did refer to it as a redemption, the provisions of the agent's contract were different. There, as shown in note 1. 159 F.2d at page 679, the contract was for an exclusive purchase agency with an exception that the Prudential expressly reserves "the right at its option to deal with any person who had any interest in the property prior to foreclosure * * * and in the event of such dealing, the Broker will not be entitled to any commission for sale of the property to any person so interested." There, unlike here, it was not necessary to determine whether the transaction was a sale or a redemption. The fact that it was with Nelson representing the mortgagor relieved appellant of any obligation for a commission.

Here, the contract was that no commission would be due if the property was redeemed, and it, therefore, becomes necessary to determine whether what occurred was a sale, as contended by appellant, or a redemption, as contended by appellee and found by the district judge.

We are in no doubt that the transaction was a redemption. The fact, of which appellant makes so much, that appellee helped to promote it and bring it about by actions and concessions on its part which favored the mortgagor in no manner prevented its being such. The evidence leaves in no doubt that all of its actions with reference to setting on foot and bringing about the redemption were animated not by considerations of depriving appellant of a commission but only by considerations of its proper self interest to protect itself from the involvements and entanglements into which it was heading, and to use that situation to further its established policy as set out at more length in note 1. 159 F.2d at page 679 of the Prudential Ins. Co. case, supra, "The Broker fully understands that it is the intention and the settled policy of The Prudential to allow a person formerly interested in any particular property to re-acquire title thereto from The Prudential if satisfactory terms can be made".

█ We think it clear that appellant's contention and arguments that the redemption which appellant and appellee had in mind was a "strict statutory redemption". that is, one where the redemption was carried out with the utmost rigor, and without the abatement of a farthing or the waiver or relinquishment of a single exaction, does violence to both the letter and the spirit of the agreement.

A careful search of Carr's testimony will show that in making the contract, the parties spoke of "a redemption", not of "a strict statutory redemption". Indeed, the word "statutory" never appeared in or in connection with Carr's testimony except in the questions of appellant's counsel, where he read from the Ann Lewis lease, and in the court's question:

"Q. Now did you mean by the redemption the redemption within the statutory period? A. Yes, Sir, I guess so. That is kind of technical. I would think that it would apply. Yes, Sir."

There was read to Carr, with his agreement that it was correct, a part of his testimony given in a former case involving the same Nelson redemption, Prudential Ins. Co. v. Jackson, supra:

"Q. And you knew that any lease that you could make was subject to redemption by Frank Nelson to the 10th of Jan.? A. That is right.

"Q. You knew that any fee or compensation on any lease that you could produce was subject to just disappearing, never being paid at all, not any fee, in case of redemption by Frank Nelson? A. That is correct."

█ We cannot, then, agree with appellant that the right of the parties must be determined as though the contract contained the words "strict statutory redemption", and that plaintiff would be entitled to a commission unless the redemption was accomplished without the waiver or omission of a single statutory requirement. We

are bound on the undisputed evidence to hold that the contract was not so made, and that it is perfectly clear that the waivers and remissions of which appellant complains were matters between Prudential and Nelson, and the transaction was not a sale, as contended by appellant, but a redemption. The judgment was right. It is

Affirmed.